UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOHN ALLEN LAWSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 18-175-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| NANCY A. BERRYHILL, | ) | **MEMORANDUM OPINION** |
| Acting Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff John Lawson and Defendant Nancy A. Berryhill ("the Commissioner"). [Record Nos. 11, 16] For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief sought by Lawson.

## I.   PROCEDURAL HISTORY

Lawson filed an application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("the Act") on January 15, 2016. [Administrative Transcript, "Tr." 171] He claimed a disability onset date of January 1, 2016. [Tr. 43] The Social Security Administration ("SSA") denied his application initially and upon reconsideration. [Tr. 84, 97] Lawson then requested an administrative hearing before an administrative law judge ("ALJ"). [Tr. 110] ALJ Tommye Mangus issued a written opinion following the hearing, finding that Lawson was not disabled. [Tr. 40-57] The SSA's Appeals Council subsequently denied Lawson's request for review. [Tr. 1-7] Thus, Lawson has exhausted his administrative remedies and this matter is ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

## II. RELEVANT FACTS

Lawson was 44 years-old at the time of the ALJ's decision. [Tr. 51] He has a high school education and worked as a security guard from 2005 to 2015. [Tr. 51,63] Lawson is able to drive, do yard work, cook for himself, and do his own laundry. [Tr. 63, 67, 69]

Lawson was admitted to Harlan ARH Hospital with fluid retention, hypertension, and respiratory distress in November 2015 (prior to his onset date). [Tr. 287] Abdul Kader Dahhan, M.D., concluded that Lawson suffered from obesity, pulmonary hypertension, essential hypertension, sleep apnea, and cor pulmonale (i.e., pulmonary heart disease). [Tr. 288]

Lawson was examined by Dr. Dahhan in January 2016 due to leg pain, edema, and high blood pressure. [Tr. 382] Dahhan noted that Lawson had pedal edema in both legs. [Tr. 383] Lawson was again examined by Dahhan on March 30, 2016, for knee pain. [Tr. 414] Dahhan noted tenderness to palpation in Lawson's knees and moderate degenerative changes with osteophyte formation and spurs in his right knee. [Tr. 416, 504] Lawson returned to Dahhan in August 2016 complaining of shortness of breath and chest pain. [Tr. 500] A chest x-ray revealed Lawson had marked cardiac enlargement with pulmonary congestion, but the results of an echocardiogram appeared normal. [Tr. 496-99]

Dr. Dahhan completed a medical assessment form regarding Lawson's ability to do work-related activities. [Tr. 427] Dahhan, however, did not include medical findings supporting his assessment for five of the seven questions included in the form. [Tr. 427-429] Instead, he indicated that lifting, carrying, standing, walking, and sitting were affected by his impairments. [Tr. 427] And he explained that Lawson could occasionally lift 20 pounds and frequently lift 10 pounds. [Tr. 427] Dr. Dahhan also concluded that Lawson could stand or

walk for two hours during an 8-hour workday. [Tr. 427] Dahhan further noted that Lawson could never climb, balance, stoop, crouch, kneel or crawl. [Tr. 428] He also checked that pushing/pulling, seeing, hearing, and speaking were affected by his impairments. [Tr. 428] Finally, Dahhan indicated that Lawson had environmental restrictions caused by his impairments including: temperature extremes, chemicals, moving machinery, dust, and fumes. [Tr. 428]

Lawson was examined at the Cloverfork Clinic for a skin infection and complaints of gout in December 2016. [Tr. 549, 562] During this medical evaluation, Rachel R. Eubank, M.D., stressed the importance of weight loss and proper diet in treating these conditions. [Tr. 560] Lawson also sought poison ivy medication in May 2017 so that he could cut weeds in his yard. [Tr. 931]

Dr. Robert Spangler conducted a psychological evaluation of Lawson on April 3, 2017. [Tr. 631] Spangler determined that Lawson had an unspecified depressive disorder, speech sound disorder, mild intellectual disability, functional illiteracy, and marginal math skills. [Tr. 636] He noted that Lawson was "fair in terms of depression; IQ, Achievement Levels, and Speech Sound Disorder are static." [Tr. 636] Dr. Spangler also found that Lawson had moderate limitations to follow work rules (simple, oral), deal with public, use judgment in public, interact with supervisors, deal with work stressors, function independently, maintain personal appearance, behave in an emotionally stable manner, relate predictability in social situations, and demonstrate reliability. [Tr. 638] Next, Spangler indicated that Lawson had mild limitations to relate to co-workers and no limitations in maintaining attention and concentration. [Tr. 638] He noted that Lawson "appear[ed] to be functioning in the mild range of intellectual disability to low borderline intelligence and is emotionally stable on current

prescriptions." [Tr. 634] Finally, Spangler concluded that Lawson does not have the judgment necessary to handle his own financial affairs if awarded benefits. [Tr. 634]

Lawson was treated at Hazard Appalachian Regional Healthcare Hospital on April 24, 2017, where he presented with chronic stable angina. [Tr. 642] A cardiac catherization was performed and Dr. Padubidri Chandrashekar diagnosed non-critical coronary artery disease. [Tr. 645-47] Dr. Chandrashekar recommended weight reduction. [Tr. 647] Thereafter, Lawson visited the Mountain Heart Center in May 2017, where Dr. Chandrashekar assessed dizziness, shortness of breath, fatigue, palpations, hyperlipidemia, hypertension, obesity, and chest pain. [Tr. 876-77]

Dr. Howard Bronstein reviewed Lawson's file in May 2016 at the reconsideration level. [Tr. 90-96] Dr. Bronstein found that Lawson was able to occasionally lift 20 pounds, frequently lift 10 pounds, stand and/or walk for a total of 3 hours, and sit for about 6 hours of an 8-hour work day. [Tr. 92-93] Bronstein noted that Lawson could occasionally climb ramps, stairs, stoop, kneel, crouch, and crawl. [Tr. 93] Additionally, he opined that Lawson could never climb ladders, ropes, or scaffolds, but could frequently balance. [Tr. 93] He concluded that Lawson was not disabled. [Tr. 95]

James Taylor, SDM, reviewed Lawson's file in January 2016. [Tr. 79] He noted that Lawson denied depression, anxiety, and other psychiatric problems when he met with Dr. Dahhan. [Tr. 79] He further noted that Lawson indicated that his depression was likely due to pain. [Tr. 79] Finally, he concluded that Lawson had no prior mental health treatment. [Tr. 79] Alex Guerrero, M.D., affirmed this initial assessment and concluded that Lawson did not have a discrete mental condition. [Tr. 91]

Lawson testified during the administrative hearing that his worst problem was congestive heart failure. [Tr. 65] He explained that he is cold constantly, his knees are swollen, he is short-winded, and he uses oxygen at night. [Tr. 65] He also claimed to be suffering from diabetes, gout, arthritis, and cirrhosis. [Tr. 68-69, 71] Lawson testified his sister does his grocery shopping and helps with his bills and that his step-daughter performs chores around the house. [Tr. 66-68] And although Lawson claims he cannot read or write, he testified he does his own laundry and cooks for himself. [Tr. 67] He estimated that he can only sit for about an hour, stand for about 30 minutes, and can only walk 25 to 50 feet without having to stop. [Tr. 71-72] Following Lawson's testimony, Vocational Expert ("VE") Jane Hall testified that Lawson could not return to his past relevant work. [Tr. 72] She explained, however, that there are jobs in the national economy that a person with Lawson's limitations can perform. [Tr. 73-74]

ALJ Mangus issued a written decision on December 14, 2017, concluding that Lawson was not disabled. [Tr. 52] After reviewing the record and considering the testimony presented, the ALJ determined that Lawson had the following severe impairments: joint dysfunction, cor pulmonale, obesity, borderline intellectual functioning, coronary artery disease, and depression. [Tr. 45] ALJ Mangus found that Lawson's gout and psoriasis were non-severe. [Tr. 45] The ALJ further concluded that Lawson did not have an impairment or combination of impairments that met or medically equaled the severity of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. [Tr. 45]

The ALJ explained that Lawson had the residual function capacity ("RFC") to perform "light work" subject to the following limitations:

> He is limited to work that does not require standing or walking in excess of 2 hours during an 8-hour day. He is unable to perform any climbing of ladders, ropes or scaffolds, or more than occasional climbing of ramps and stairs. He can perform no more than occasional stooping, kneeling, crouching, or crawling, and no more than frequent balancing. He must avoid all exposure to workplace hazards, such as dangerous, moving machinery and unprotected heights and no concentrated exposure to pulmonary irritants, such as dust, fumes, smoke, chemicals, and noxious gases. Mentally, he can understand, remember, and carry out simple instructions and tasks and adapt to occasional, gradually introduced changes.

[Tr. 47] ALJ Mangus concluded that Lawson could not perform his past relevant work as a security guard. [Tr. 51] However, she determined that there were jobs in the national economy that Lawson could perform. [Tr. 52] As a result, the ALJ found that Lawson was not under disability from January 1, 2016, through the date of her decision. [Tr. 52]

### III. STANDARD OF REVIEW

Under the Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007) (citing 42 U.S.C. § 423(d)(1)(A)). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

A claimant must first demonstrate that he is not engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b). Second, the claimant must show that he suffers from a severe impairment or a combination of impairments.

20 C.F.R. § 404.1520(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d). Fourth, if the claimant has a severe impairment but the Commissioner cannot make a determination of the disability based on medical evaluations and current work activity, the Commissioner will review the claimant's RFC and relevant past work to determine whether he can perform his past work. 20 C.F.R. § 404.1520(e). If he can, he is not disabled. 20 C.F.R. § 404.1520(f).

Under the fifth step of the analysis, if the claimant's impairments prevent him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g). "The Commissioner has the burden of proof only on 'the fifth step, proving that there is work available in the economy that the claimant can perform.'" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 785 (6th Cir. 2009) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

This Court's review is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the ALJ employed the proper legal standards in reaching her decision. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). Substantial evidence is such relevant evidence as reasonable minds might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007). The Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV. LEGAL ANALYSIS

### A. The ALJ Did Not Err by Finding That Lawson's Impairments Did Not Meet A Listing Category.

Lawson claims that the ALJ failed to address the effect of his diagnosis of pulmonary heart disease and evaluate his condition under the Listings of Impairments, specifically 3.09 Chronic Heart Failure. [Record No. 11-1, p. 14] Listing 3.09 is "Chronic pulmonary hypertension due to any cause (see 3.00L) documented by mean pulmonary artery pressure equal to or great than 40 mm Hg as determined by cardiac catherization while medically stable (see 3.00E2a)." At step three of the sequential analysis, the ALJ must determine whether a claimant's severe impairment meets or medically equals a listed impairment in Appendix I of 20 C.F.R. Section 404. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1525. If this is established, the ALJ must find the claimant disabled, and the analysis ends there. *Id*.

The listing of impairments describes conditions that the SSA considers "severe enough to prevent an individual from doing any gainful activity, regardless of his age, education, or work experience." 20 C.F.R. § 404.1525(a). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing," and claimants have the burden of demonstrating that their condition satisfies the listing's requirements. *See* 20 C.F.R. § 404.1525(c)(3); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009). If a claimant demonstrates that his impairment satisfies the listings requirements, or is the medical equivalent of a listing, then he is "deemed conclusively disabled, and entitled to benefits." *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x. 411, 414 (6th Cir. 2011). The ALJ is required to compare the claimant's condition with the requirements of the listing and determine whether

the condition either satisfies the requirements of the listing or is the medical equivalent of the listing. *Id.*

An ALJ's failure to fully develop an evaluation of a listing at step three is not grounds for reversal if the ALJ provided sufficient factual findings elsewhere in the decision that support the conclusion on the listing impairment. For example, in *Bledsoe v. Barnhart*, 165 F. App'x. 408 (6th Cir. 2006), the claimant argued that the ALJ procedurally erred by not fully developing his analysis of the claimant's impairments at step three. The Sixth Circuit rejected the argument, noting that the ALJ "made specific factual findings about the credibility of witnesses and expert reports" elsewhere in the decision, which indicated that the ALJ did consider whether the claimant's impairment qualified for a listing. *Id*. at 410-11. Importantly, the court noted that the ALJ is not required to fully explain his reasoning on the impairment within the step three analysis because "there is no heightened articulation standard where the ALJ's findings are supported by substantial evidence." *Id*. at 411 (citing *Dorton v. Heckler*, 789 F.2d 363, 367 (6th Cir. 1986)). Thus, the court concluded that as long as the ALJ's decision indicates that his decision regarding the listing is supported by substantial evidence, it is irrelevant that the ALJ failed to fully discuss those findings at step three of the analysis. *Id*.; *see also Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359 (6th Cir. 2014) (rejecting the claimant's argument that the ALJ's decision should be reversed because it only included a "sparse analysis" at step three and upholding the decision because "the ALJ made sufficient factual findings elsewhere in the decision to support his conclusion at step three").

In this case, ALJ Mangus adequately addressed Lawson's pulmonary heart disease in making a decision about his impairments under the Listing Categories. The ALJ determined that this was one of Lawson's severe impairments. However, she found that the medical

evidence did not meet listing-level severity, either alone or in combination with other impairments. [Tr. 46] She noted that no treating physician, state agency reviewer, consultant, or examiner "has credibly concluded that the claimant has an impairment severe enough to meet or equal a listing." [Tr. 46] Additionally, the ALJ concluded that "no acceptable medical source has mentioned findings equivalent in severity to the criteria of any listed impairment." [Tr. 46]

The ALJ's decision regarding this issue is supported by substantial evidence. ALJ Mangus noted that Lawson complained of shortness of breath, but no medical evidence concluded that the shortness of breath was cardiac-related. While a chest x-ray showed marked cardiac enlargement with pulmonary congestion, an echocardiogram appeared normal. [Tr. 496-99] A cardiac catheterization performed in April 2017 showed single vessel disease in the 60 % to 70% range. [Tr. 647] However, Dr. Chandrashekar noted that "it [was] clearly non-critical at [that] time." [Tr. 647] He concluded in May 2017 that Lawson had "non-critical, non-obstructive, non-occlusive coronary artery disease" and that one should consider non-cardiac etiologies for symptoms. [Tr. 876-77] The ALJ noted that "cardiac studies produced non-critical findings and it was even suggested that the claimant's symptoms might be non-cardiac related." [Tr. 49]

### B. The ALJ Adequately Addressed The Opinion of Lawson's Treating Physician.

Lawson also claims that the ALJ failed to properly address the restrictions and diagnosis of his treating physician, Dr. Dahhan. [Record No. 11-1, p. 15] Greater deference generally is given to the opinions of treating physicians than the opinions of non-treating physicians. *Rogers*, 486 F.3d at 242; *see also* 20 C.F.R. § 404.1527. A treating physician's

opinion will be given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case." 20 C.F.R. § 404.1527(c)(2). However, a treating physician's opinion can be discounted "if there is substantial medical evidence to the contrary or the physician provided a conclusory opinion that claimant is unable to work," or the opinion "was inconsistent with other evidence in the record or the assessment relied on subjective symptoms without support of objective findings." *Dyer v. Soc. Sec. Admin*, 568 F. App'x 422, 426 (6th Cir. 2014) (citing *Tate v. Comm'r of Soc. Sec.*, 467 F. App'x 431, 433 (6th Cir. 2012)); *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992) ("The ALJ . . . is not bound by conclusory statements of doctors, particularly where they are unsupported by detailed objective criteria and documentation.").

If the ALJ does not give a treating source opinion controlling weight, then the opinion is weighed based on the length, frequency, nature, and extent of the treatment relationship, as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence. 20 C.F.R. § 404.1527(c)(2)-(6); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). Additionally, the ALJ must provide "good reasons" for discounting the weight given to a treating source's opinion. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (citing 20 C.F.R. § 404.1527(d)(2)).[1] These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id.*

---

[1] This regulation is now located at 20 C.F.R. § 404.1527(c)(2).

(quoting Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *5 (1996)). This requirement allows a claimant to understand the disposition of his case, and facilitates meaningful review of the ALJ's application of the treating physician rule. *Id.* at 544-45.

The good reasons requirement is not excused simply because an ALJ's decision is supported by substantial evidence. *Id.* at 546. However, an ALJ's failure to provide good reasons may be harmless error if the ALJ has met the goal of § 1527(c) even though she does not comply with its terms, for example by "indirectly attacking the 'supportability' of the doctor's opinion, § 404.1527(d)(3), or the 'consistency' of her opinion with the record as a whole, § 404.1527(d)(4), both of which are grounds for rejecting a treating source opinion, *see* § 404.1527(d)(3)."[2] *Hall v. Comm'r of Soc. Sec.*, 148 F. App'x 456, 464 (6th Cir. 2005); *see also Nelson v. Comm'r of Soc. Sec.*, 195 F. App'x 462, 470 (6th Cir. 2006).

The critical inquiry here is not whether the ALJ rejected the treating physician's opinion, but whether ALJ Mangus implicitly provided sufficient reasons for her partial rejection of the opinion. *Hall*, 148 F. App'x at 456. Further, an insufficient discussion by an ALJ may be harmless error if the treating physician's opinion was so patently deficient that the ALJ could not possible credit it. *Hernandez v. Comm'r of Soc. Sec.*, 644 F. App'x 468, 474 (6th Cir. 2016).

ALJ Mangus addressed Lawson's treating physician's medical source statement and incorporated most of the limitations in the RFC determination. The ALJ limited Lawson to light work, meaning he could occasionally lift 20 pounds and frequently lift 10 pounds. [Tr. 47; 20 C.F.R. § 404.1567(b)] She further limited Lawson to walking, standing, and sitting for

---

[2] These regulations are now located at 20 C.F.R. § 404.1527(c)(3)-(4).

two hours in an eight-hour workday. [Tr. 47] These are the same restrictions Dr. Dahhan noted in his medical source statement. [Tr. 427-29]

Although the ALJ's decision is not entirely consistent with Dr. Dahhan's opinion, Dahhan failed to give any narrative explanation for many of the limitations he assessed. [Tr. 427-429] And a check-box Medical Source Statement by itself provides only weak evidence. *See Hernandez,* 644 F. App'x at 474 (citing *Mason v. Shalala*, 994 F.2d 1058, 1065 (3d Cir. 1993) ("Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best.")).

It is extremely difficult to rely on the conclusory nature of the portions of the medical source statement without a narrative explanation. *See id*. (explaining that it is impossible to analyze the consistency of the treating physician's analysis with the medical record when the check-box form is not accompanied by any explanation); *see also Keeton v. Comm'r of Soc. Sec.*, 583 F. App'x 515, 525 (6th Cir. 2014). The RFC determination by ALJ Mangus is supported by substantial evidence and is consistent with portions of Dahhan's medical source statement. Additionally, ALJ Mangus gave strong weight to the opinion of state agency examiner, Dr. Bronstein. [Tr. 92-94] Even though the ALJ failed to give "good reasons" for not incorporating all of the postural limitations checked in the treating physician's medical source statement, it is harmless error because the ALJ met the goal of § 1527(c).

**C. The ALJ Did Not Completely Disregard The Medical Reports Of The Consultative Examiner.**

Lawson asserts that the ALJ completely disregarded the medical report of consultative examiner, Dr. Spangler. [Record No. 11-1, p. 15] While "an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not

performed an examination," ALJs have more discretion in considering non-treating source opinions. *Gayheart,* 710 F.3d at 375. Notably, they need not give reasons for discounting non-treating source opinions. *See Martin v. Comm'r of Soc. Sec.*, 658 F. App'x 255, 259 (6th Cir. 2016) ("But because Dr. Rutledge and Dr. Joslin are non-treating sources, the reasons-giving requirement is inapplicable to their opinions."); *see also Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007) ("[T]he SSA requires ALJs to give reasons for only treating sources."); *Reeves,* 618 F. App'x at 273 (same).

While ALJs are not required to defer to the opinions of non-treating sources, they must provide a meaningful explanation regarding the weight given to particular medical source opinions. 20 C.F.R. § 404.1527(f)(2)(ii); s*ee Ott v. Comm'r of Soc. Sec.*, No. 1:08-cv-399, 2009 WL 3199064, at *7 (S.D. Ohio Sept. 29. 2009). And such opinions can be given weight only insofar as they are supported by the record. SSR 96-6, 1996 WL 374180, at *2.

Contrary to Lawson's assertions, ALJ Mangus did not disregard the psychological evaluation of Dr. Spangler. She noted that Lawson's psychological evaluations appeared normal throughout the relevant period and the record was limited regarding his mental health treatment. The ALJ reviewed the psychological testing performed by Spangler. [Tr. 46] Dr. Spangler opined that Lawson's judgment and insight were consistent with a mild intellectual disability, he had mild to moderate difficulties in making occupational adjustments, extreme limitations in complex and detailed job instructions, he had moderate difficult in making social adjustments, and two or more absences a month were expected. [Tr. 631-38] ALJ Mangus concluded that Lawson had "mild limitations in understanding, remembering or applying information, mild limitations in interacting with others, moderate limitations with regard to

concentrating, persisting or maintaining pace, and moderate limitations in adapting or managing oneself." [Tr. 46]

Lawson was limited to understanding, remembering, and carrying out simple instructions and tasks and adapting to gradually introduced changes based on Dr. Spangler's psychological evaluation. [Tr. 50] ALJ Mangus disagreed with other limitations imposed by Spangler and disputed that Lawson would likely have two or more absences a month. [Tr. 50] She found that there are no other psychological findings in the medical evidence and nothing to support additional limitations. [Tr. 50] When James Taylor, SDM, reviewed Lawson's file he indicated that Lawson denied suffering from depression, anxiety, and other psychiatric problems when he met with Dr. Dahhan. [Tr. 79] He also noted that Lawson stated his depression was due to pain. [Tr. 79] He further determined that Lawson had no prior mental health treatment. [Tr. 79] Dr. Guerrero affirmed the initial assessment and noted that the medical evidence of record does not indicate the presence of a discrete medical condition. [Tr. 91] ALJ Mangus explicitly referenced which psychological findings of Dr. Spangler she used in developing Lawson's RFC. And she explained what portions of Spangler's opinion she discounted in making her decision.

### D. ALJ Mangus Properly Evaluated Lawson's Subjective Complaints of Pain.

Next, Lawson contends that the ALJ did not properly evaluate his subjective complaints of pain. [Record No. 11-1, p. 17] The Court has reviewed the record and finds that the ALJ applied the required two-step process for evaluating subjective complaints of pain. *See* 20 C.F.R. § 404.1529; SSR 16-3p, 2017 5180304 (Oct. 25, 2017); *Walters v. Commissioner of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997).

First, the ALJ found that Lawson's medically-determinable impairments could reasonably be expected to cause the symptoms he alleged. *See* 20 C.F.R. § 404.11529(b). ALJ Mangus detailed Lawson's complaints made during the administrative hearing. [Tr. 48] She reviewed his allegations of difficulty walking up hills or stairs, claimed burning in his feet and legs causing him to need to lie down and elevate his legs, and feelings of not wanting to be around anyone or difficulty paying attention. [Tr. 48] The ALJ also noted that Lawson asserted that, "his impairments prevented him from sitting more than one hour, standing for more than 30 minutes, and walking more than 25 to 50 feet." [Tr. 48] She concluded that Lawson had a history of obesity with related impairments such as gout, hypertension, hyperlipidemia, diabetes, and coronary artery disease. [Tr. 48] The ALJ then determined that Lawson's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with the medical evidence and other evidence in the record. [Tr. 48]

ALJ Mangus discussed the relevant medical evidence and explained why it did not support the limitations that Lawson alleged. [Tr. 48-49] She explained that Lawson received treatment for joint dysfunction, pulmonary heart disease, obesity, and coronary artery disease. [Tr. 49] However, Mangus concluded the medical evidence does not support Lawson's alleged loss of functioning. [Tr. 49] The ALJ detailed that Lawson's diabetic examinations were normal, that there was no objective evidence that his shortness of breath was cardiac related, and that his echocardiogram was normal. [Tr. 48-49] ALJ Mangus noted Lawson had largely normal physical and psychiatric evaluations. [Tr. 49] She stated that the "record generally suggests that the claimant's condition is stable and his daily activities are minimally effected as evidenced by his ability to perform yard work." [Tr. 49] Following her review of

Lawson's subjective complaints of pain, ALJ Mangus discussed the limitations presented by his doctor and the state agency consultants in assessing what limitations Lawson had in deciding his RFC.

**E.     The ALJ Did Not Err In Making Lawson's RFC Determination.**

Finally, Lawson claims that the ALJ erred by finding that Lawson had a RFC to do light work because, according to Lawson, this contradicted the VE's testimony limiting him to only sedentary work. He asserts that the hypothetical posed to the VE and her response would not allow for a full range of light work and that the VE's answer illustrated that Lawson was limited to sedentary work.

However, it is the ALJ's responsibility to determine Lawson's RFC and her decision on this issue is supported by substantial evidence. *See Webb v. Comm'r of Soc. Sec.,* 368 F.3d 629, 633 (6th Cir. 2004) ("The ALJ is charged with the responsibility of evaluating the medical evidence and the claimant's testimony to form the assessment of the claimant's residual functional capacity."). "An ALJ considers numerous factors in constructing a claimant's RFC, including the medical evidence, non-medical evidence, and the claimant's credibility." *Coldiron v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 444 (6th Cir. 2010). After the ALJ determines what restrictions a claimant has, the ALJ may pose questions to a vocational expert to determine that a claimant possesses the capacity to perform other jobs in the national economy after an ALJ decides that a claimant cannot perform past relevant work. *Maziarz v. Secretary of Health & Human Services,* 837 F.2d 240, 247 (6th Cir. 1987). "An ALJ may satisfy her burden through the use of hypothetical questions posed to a vocational expert," as long as the questions accurately portray the claimant's physical and mental impairments.

*Coney v. Comm'r Soc. Sec.,* 2014 U.S. Dist. LEXIS 21290 (W.D. Mich. 2014); *see also Cline v. Comm'r of Soc. Sec.*, 96 F.3d 146, 150 (6th Cir. 1996).

In making the RFC determination, ALJ Mangus considered Lawson's subjective complaints of pain, treatment notes from Dr. Dahhan, the opinion of the state agency medical consultants, the psychological evaluation of Dr. Spangler, the medical evidence of record, and the testimony presented at the hearing. [Tr. 47-52] ALJ Mangus' decision is supported by substantial evidence.

### F. The ALJ's Decision That McHone Was Not Disabled Is Supported By Substantial Evidence.

If supported by substantial evidence, the Commissioner's decision must be affirmed, even if the reviewing court would decide the case differently and even if the claimant's position is also supported by substantial evidence. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *see also Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Here, the ALJ's decision is supported by the documentary record, the findings of the state agency consultants, and portions of the treating physician's medical source statement.

### V. CONCLUSION

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendant's motion for summary judgment [Record No. 16] is **GRANTED**.

2. The plaintiff's motion for summary judgment [Record No. 11] is **DENIED**.

3. The Commissioner's decision will be **AFFIRMED** by a separate judgment entered this date.

Dated: November 29, 2018.


Signed By:
*Danny C. Reeves*
United States District Judge